IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AINA PAKNAHAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-773-PRW |
| | ) | |
| DIAGNOSTIC LABORATORY OF OKLAHOMA, LLC, and METWEST INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 17), seeking dismissal of count two of Plaintiff's Complaint. For the reasons that follow, the Motion (Dkt. 17) is **GRANTED**.

### *Background*

This case concerns Plaintiff Aina Paknahad's December 2019 discharge from her employment with Defendants Diagnostic Laboratory of Oklahoma and Metwest Inc.[1] In January of 2019, Paknahad began working as a specimen processor in Defendants' laboratory. Throughout her less than year of employment, Paknahad made several

---

[1] At this stage, the Court accepts all well-pleaded allegations in Paknahad's Complaint as true and views those facts in the light most favorable to Paknahad. *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

complaints to her supervisor about what she viewed as violations of Defendants' internal policy related to the use of cell phones in the laboratory. And she claims that she was discharged, in part, because of these complaints.

In response, Paknahad filed this lawsuit. At issue in this partial motion to dismiss is count two of Paknahad's Complaint, which alleges that her dismissal—based in part on complaints about the use of cell phones in the laboratory—constitutes a wrongful discharge in violation of Oklahoma public policy under the Oklahoma Supreme Court's decision in in *Burk v. K-Mart Corporation*.[2] While Oklahoma generally follows the employment-at-will doctrine for employment contracts of indefinite duration, *Burk* "created a narrow exception to the employment-at-will doctrine—the public policy exception."[3] That exception, commonly referred to as a "*Burk* tort," permits "an employee who is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy [to] bring a tort claim for wrongful discharge."[4]

Paknahad alleges that her complaints about the use of cell phones in the laboratory "were protected by Oklahoma public policy governing hospital standards."[5] Pointing to

---

[2] 770 P.2d 24 (Okla. 1989). Paknahad's Complaint also asserts a religious discrimination claim under Title VII of the Civil Rights Act, but that claim is not at issue in Defendants' motion to dismiss.

[3] *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001), *as corrected* (Nov. 7, 2001).

[4] *Id.*

[5] Am. Compl. (Dkt. 15), at 10.

one statute, various regulations, caselaw, and Defendants' own internal policies, Paknahad claims that there is an established public policy "prohibit[ing] the routine use of cell phones and other electronics in a laboratory setting where there is a risk of biological, chemical, or radiological contamination, absent special precautions."[6] And because her complaints were acts consistent with that public policy, according to Paknahad, her allegations that Defendants' fired her because of those complaints are sufficient to state a claim under *Burk*.

Defendants disagree. They argue that none of the authorities Paknahad relies on identify an Oklahoma public policy goal that is well established, clear and compelling and articulated in existing constitutional, statutory, regulatory, or jurisprudential law—a threshold requirement for a *Burk* claim. Because of this, Defendants argue that Paknahad's *Burk* claim fails as a matter of law and must be dismissed.

### *Legal Standard*

"A cause of action may be dismissed under [Rule] 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim."[7] When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[8] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at

---

[6] *Id.* at 7.

[7] *Engebretson v. Mahoney*, 2010 WL 2683202, at *2 (D. Mont. 2010).

[8] *Alvarado*, 493 F.3d at 1215 (quoting *David*, 101 F.3d at 1352).

trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9] At this stage, a plaintiff bears the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] The pleaded facts must be sufficient to establish that the claim is plausible.[11] Ultimately, the Court may "dismiss a claim on the basis of a[ny] dispositive issue of law."[12]

## Discussion

I. Burk *Torts*.

As explained above, Oklahoma generally follows the employment-at-will doctrine for employment contracts of indefinite duration. That means that an "employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being guilty of a legal wrong."[13] *Burk*, however, is a judicially created exception to that baseline rule. To prevail on a claim of wrongful discharge in violation of

---

[9] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal citations & quotation marks omitted).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks & citations omitted) (alteration in original).

[11] *See id.* Generally, a complaint will survive a Rule 12(b)(6) motion if it "state[s] a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[12] *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

[13] *Ho v. Tulsa Spine & Specialty Hosp., LLC*, 507 P.3d 673, 677 (Okla. 2021).

Oklahoma's public policy under *Burk*, "a plaintiff must first identify an Oklahoma public policy goal that is well established, clear and compelling and articulated in existing constitutional, statutory or jurisprudential law,"[14] or through executive action taken pursuant to a statutory grant of authority.[15] Whether Paknahad has identified a sufficiently discernable public policy is the key question in this Motion. That question presents a question of law to be resolved by the Court.[16]

*Burk* itself is somewhat unique. As a general matter, under the Oklahoma Constitution, the political branches bear the primary responsibility of determining the States' public policy and whether a private party should have a judicially enforceable remedy for a violation of a particular public policy.[17] So, when public policy demands an

---

[14] *Barker*, 40 P.3d at 468. *See Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008) ("[A]n employer's violation of a state-declared public policy is the fundamental predicate for a *Burk* tort.").

[15] *See Ho*, 507 P.3d at 677–82 (a subset of executive orders); *Moore v. Warr Acres Nursing Ctr., LLC*, 376 P.3d 894, 905–907 (Okla. 2016) (Winchester, J., dissenting) (noting the majority's specific reliance on administrative rules and regulations). A plaintiff must also prove that he or she "was an at-will employee, that he or she was actually or constructively discharged from employment and that the employer's discharge decision violated the articulated public policy." *Barker*, 40 P.3d at 468. Because Defendants argue that Paknahad's Complaint fails at step one—i.e., Paknahad fails to identify an Oklahoma public policy goal that is well established, clear and compelling—these elements are not directly at issue in this motion to dismiss.

[16] *Darrow*, 176 P.3d at 1210. *Burk* itself recognized the role of courts "screen[ing] cases on motions to dismiss for failure to state a claim" on this basis. 770 P.2d at 29 (quoting *Brockmeyer v. Dun & Bradstreet,* 335 N.W.2d 834, 841 (Wis. 1983)).

[17] *See Burk*, 770 P.2d at 34 (Simms, J., dissenting) ("Here, as in other situations, public policy considerations are best determined by the legislature."); *Ho*, 507 P.3d at 678 ("[T]he legislative branch sets the public policy of the State of Oklahoma by enacting law which does not conflict with the Oklahoma Constitution. The Governor has a role in setting public

exception to the baseline rule set by the employment-at-will doctrine, the Oklahoma Legislature bears the primary responsibility to "enact[] various statutory exceptions to the doctrine to accommodate the competing interests of the employee and employer."[18] *Burk*, however, deviates from that general rule, and allows courts to jump in and create exceptions to the at-will doctrine and provide an accompanying cause of action.[19] And courts are to do this under the "vague" standard of the State's "public policy."[20]

Recognizing the potential dangers for judicial policy making under the standard it announced, *Burk* acknowledged that "the vague meaning of the term public policy" demanded that "the public policy exception" it created "must be tightly circumscribed."[21] Since *Burk*, the Oklahoma Supreme Court has repeatedly reaffirmed this principle and emphasized that the cause of action recognized in *Burk* is to be construed narrowly and "applie[d] to only a narrow class of cases."[22]

---

policy through his function to execute the law."); *Darrow*, 176 P.3d at 1212 ("[I]t is neither the court nor Congress but the Oklahoma legislature that is primarily vested with the responsibility of declaring the public policy of this state."). *Cf. Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233 (Okla. 2018).

[18] *Ho*, 507 P.3d at 678. *Cf. Barker*, 40 P.3d at 470.

[19] *See Ho*, 507 P.3d at 683 (Kuehn, J., specially concurring) (noting that public policy is typically set by the legislature and that *Burk* permits the judiciary to "adopt policy through case law" in "rare circumstances").

[20] *See Burk*, 770 P.2d at 28; *Ho*, 507 P.3d at 678.

[21] *Burk*, 770 P.2d at 28–29.

[22] *Barker*, 40 P.3d at 468. *See, e.g.*, *Ho*, 507 P.3d at 678 ("[B]ecause the term 'public policy' [is] vague, the exception ha[s] to be tightly circumscribed."); *Reynolds v. Advance Alarms, Inc.*, 232 P.3d 907, 909 (Okla. 2009), *as corrected* (Dec. 16, 2009); *Culp v. Reynolds*, 2020 WL 1663523, at *7 (W.D. Okla. Apr. 3, 2020) ("But the Court warned here, as it has done

The *Burk* line of cases accomplishes this in two ways. First, it requires that the public policy be articulated by existing public law, i.e., constitutional, statutory, regulatory, or jurisprudential law.[23] Second, the public policy articulated by those existing sources must be "specific, well established, clear and compelling."[24]

II. *Paknahad has failed to identify an Oklahoma public policy goal that is well established, clear and compelling and articulated in existing law.*

Paknahad argues that there is an established *Burk*-level public policy prohibiting the routine use of cell phones and other electronics in a hospital laboratory setting. But none of the sources she points to identify such a well established, clear and compelling policy articulated in existing constitutional, statutory, regulatory, or jurisprudential law.[25]

---

many occasions following this decision, that courts should 'proceed cautiously' if asked to declare a new public policy to form the basis of a *Burk* tort.").

[23] *See Barker*, 40 P.3d at 468; *Ho*, 507 P.3d at 677–82.

[24] *Barker*, 40 P.3d at 468–69. *See Hayes v. Eateries, Inc.*, 905 P.2d 778, 787 (Okla. 1995) (requiring "a general consensus" around a public policy that is "so thoroughly established in the public conscious"); *id.* at 788 ("*Burk* . . . only protects the employee from termination by the employer when such discharge has violated a clear mandate of public policy."); *Darrow*, 176 P.3d at 1212 ("Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy.").

[25] As explained below, none of the sources Paknahad points to identify a well established, clear and compelling public policy under *Burk*. At several points in her briefing, Paknahad argues that this is not necessarily fatal to her *Burk* claim because a *Burk* public policy can be established by a combination of sources. And taken together, she suggests that all the sources she identifies establish a public policy related to "protecting public health" that is enforceable under *Burk*. It is certainly true that *Burk* permits consideration of "the totality of the law," that courts may look to "the full panoply of pertinent sources," and that a public policy may be articulated by several sources "considered in combination rather than singly." *Groce v. Foster*, 880 P.3d 902, 907 (Okla. 1994) (emphases omitted). But the public policy gleaned from a variety of sources must still be specific, explicit, and clearly

7

Start with statutory law. "[N]ot every statute sets forth a mandate of public policy upon which a *Burk* tort may be based."[26] Rather, "Unless a statute specifically articulates an *established and well-defined* Oklahoma public policy, the statute may not be relied upon to support a common law *Burk* tort."[27] The statute must set forth a "specific" policy and "prescribe[] a norm of conduct"[28] so as to make the norm "thoroughly established in the public conscious."[29] If the statute "leaves the parameters" of the policy "undefined," the statute "falls short of being sufficiently specific and clear for purposes of articulating an established and well-defined public policy," and as a result, "cannot support a *Burk* tort."[30]

Paknahad points to only one statute, Okla. Stat. tit. 63, § 1-705. At the outset, the Court is unaware, and neither party has identified, any Oklahoma precedent recognizing the use of the cited statute as a basis from which to derive actionable public policy for a *Burk* claim. This is significant because the Oklahoma Supreme Court has warned that

---

articulated. *See id.* at 906–07. And even taken together, Paknahad's sources fail to establish such a policy. A public policy related to "protecting public health" is exactly the type of vague, undefined public policy that the Oklahoma Supreme Court has repeatedly warned against in the *Burk* context.

[26] *Barker*, 40 P.3d at 470. *See, e.g.*, *Reynolds*, 232 P.3d at 910–13; *Griffin v. Mullinix*, 947 P.2d 177 (Okla. 1997). The same principle is true for public health related statutes. *See Hayes*, 905 P.2d at 787 n.7.

[27] *Barker*, 40 P.3d at 470 (emphasis in original).

[28] *Darrow*, 176 P.3d at 1212.

[29] *Hayes*, 905 P.2d at 787.

[30] *Barker*, 40 P.3d at 470.

courts should "proceed cautiously" if asked to declare for the first time that a statute creates a new public policy to form the basis of a *Burk* tort.[31]

Moreover, the Court does not discern a clear and compelling public policy from this statute. Section 1-705 sets no standards or policies at all, let alone a specific, well-established policy. The provision merely *authorizes* the State Commissioner of Health to "*promulgate* rules and standards for the construction and operation of hospitals," allows the Commissioner to inspect hospitals for compliance with the any rules that are promulgated, and permits the Commissioner to take any action necessary to correct any violations of any rules that are promulgated.[32] It promulgates no rules or standards itself and prescribes no "norm of conduct."[33] The provision not only fails to define the parameters of a policy,[34] it sets no substantive policy at all—let alone a policy "specific" to the use of electronic devices in laboratories. Section 1-705, therefore, cannot support a *Burk* tort.[35]

The three regulations Paknahad points to fair no better. The first regulation merely sets out "general provisions" related to hospital licensing, and like the statute, sets forth no

---

[31] *Culp*, 2020 WL 1663523, at *7 (citing *Moore*, 376 P.3d at 899).

[32] Okla. Stat. tit. 63, § 1-705(A)–(B) (emphasis added). Subsections (C) and (D) are even further afield. Subsection (C) makes clear that the provision does not exempt hospitals from other licensing and inspection provisions. And subsection (D) deals with the provision of psychiatric or chemical dependency community-based programs and services.

[33] *Hayes*, 905 P.2d at 787.

[34] *Barker*, 40 P.3d at 470.

[35] *Id.*

relevant substantive policies.[36] Paknahad next points to a regulation requiring licensed hospitals to "be in conformity with federal, state, and local laws relating to fire and safety, to communicable and reportable diseases, to occupational safety and health, and to other relevant matters."[37] But this provision creates no substantive policies on its own. It merely incorporates substantive policies set by other federal, state, and local laws. And Paknahad identifies no federal, state, or local laws relating to the use of cell phones and other electronics in a hospital laboratory that would be incorporated by this regulation and be a candidate for articulating a clear and compelling Oklahoma public policy enforceable under *Burk*.

The final regulation Paknahad points to—Okla. Admin. Code § 310:667-23-4—is arguably somewhat more relevant: it at least deals with hospital laboratories. But again, the Court is unaware, and neither party has identified, any Oklahoma precedent recognizing the use of the cited regulation as a basis from which to derive actionable public policy for a *Burk* claim. And in any event, the provision does not identify a "specific, well established, clear and compelling" public policy related to Paknahad's complaints.[38] The regulation merely requires hospitals to "have a well-organized, adequately supervised clinical laboratory with the necessary staff, space, facilities, and equipment to perform

---

[36] *See* Okla. Admin. Code §§ 310:667-1-1–5.

[37] Okla. Admin. Code § 310:667-5-3.

[38] *See Barker*, 40 P.3d at 468–69.

those services commensurate with the hospital's needs for its patients."[39] While this regulation could possibly be construed as identifying some vague public policy requiring laborites to be "adequately supervised," it sets forth no "specific" policies related to the conduct at issue in Paknahad's complaints.[40] The regulation also "leaves the parameters" of the adequately-supervised-laboratory policy completely "undefined," and thus "falls short of being sufficiently specific and clear for purposes of articulating an established and well-defined public policy" under *Burk*.[41]

Finding little support in existing statutes or regulations, Paknahad falls back to Defendants' own internal policies related to the use of electronic devices. She points out that Defendants' internal policies note that "mobile (cell) phones should be used in ways (e.g., quietly) and at times that do not interfere with the performance of work," that employees "are encouraged to use mobile phones . . . generally outside of the work area," and that the use of "personal electronic devices (e.g., radios or music players)" is "prohibited in laboratory settings and locations where the risk of biological, chemical, or radiological contamination exists."[42] The problem with relying on these policies is that an internal policy set by a private entity is not a "public" policy—it is not articulated in

---

[39] Okla. Admin. Code § 310:667-23-4(a). The regulation also requires the laboratory to meet conditions set out in certain federal regulations and be certified pursuant to a federal statute. § 310:667-23-4(b)–(c). But Paknahad identifies nothing in the federal laws incorporated by this regulation that relate to the specific public policy she alleges here.

[40] *See Hayes*, 905 P.2d at 787.

[41] *Barker*, 40 P.3d at 470.

[42] Ex. 1 (Dkt. 20), at 2 (cleaned up).

existing constitutional, statutory, regulatory, or jurisprudential law. And as a result, Defendants' internal policies cannot establish a public policy enforceable under *Burk*.[43]

Because none of the sources Paknahad relies on identify an Oklahoma public policy goal related to the use of cell phones in a laboratory that is well established, clear and compelling and articulated in existing constitutional, statutory, regulatory, or jurisprudential law, she has failed to state a claim under *Burk*.

### *Conclusion*

Accordingly, Defendants' Partial Motion to Dismiss (Dkt. 17) is **GRANTED**, and Paknahad's claim for wrongful discharge in violation of Oklahoma public policy is **DISMISSED** without prejudice.

**IT IS SO ORDERED** this 3rd day of January 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[43] *See, e.g.*, *Vannerson v. Bd. of Regents of Univ. of Oklahoma*, 784 P.2d 1053, 1055 (Okla. 1989) (holding that the employers "internal policy that custodial department records be accurate fails to rise to the level of a constitutional, statutory or decisional statement of public policy of the State of Oklahoma" required to state a claim under *Burk*). *Cf. Barker*, 40 P.3d at 468; *Hayes*, 905 P.2d at 788. Paknahad has not shown that the internal policy was made pursuant to some clear, external legal obligation or that violation of the internal policy necessarily involved the violation of health or safety laws. *Cf. Hayes*, 905 P.2d at 786–88; *Moore*, 376 P.3d at 901–02 (suggesting that internal policies may be relevant if there is a specific statutory or regulatory regime requiring the policy at issue).